# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                          :

In re:                        :     Chapter 11
                          :

TRIANGLE USA PETROLEUM    :     Case No. 16-11566 (MFW)
CORPORATION, *et al.*,        :
                          :     Jointly Administered

            Debtors.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                          :

TRIANGLE USA PETROLEUM    :
CORPORATION,                :
                          :

            Plaintiff,    :
                          :

           v.             :     Adv. Pro. No. 16-51023(MFW)
                          :

CALIBER MEASUREMENT SERVICES :
LLC, CALIBER MIDSTREAM FRESH :
WATER PARTNERS LLC, and CALIBER :
NORTH DAKOTA LLC,
                          :

          Defendants.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## TRIANGLE USA PETROLEUM CORPORATION'S OPPOSITION TO CALIBER MEASUREMENT SERVICES LLC, CALIBER MIDSTREAM FRESH WATER PARTNERS LLC, AND CALIBER NORTH DAKOTA LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER THE ADVERSARY PROCEEDING COMPLAINT FOR IMPROPER VENUE, OR FOR ABSTENTION AND DISMISSAL

Sarah E. Pierce (I.D. No. 4648)
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
 (302) 651-3000

Albert L Hogan III
Ron E. Meisler
Christopher M. Dressel
Renu P. Shah
Lindsey J. Sieling
Skadden, Arps, Slate, Meagher & Flom LLP
155 N. Wacker Drive
Chicago, Illinois 60606-1720
(312) 407-0700

Dated: September 2, 2016

*Counsel for Plaintiff Triangle USA*
*Petroleum Corporation*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

NATURE AND STAGE OF PROCEEDING ........................................................................4

SUMMARY OF ARGUMENT ..............................................................................................4

STATEMENT OF FACTS ......................................................................................................5

ARGUMENT ...........................................................................................................................7

    I.    The Forum Selection Clauses Do Not Warrant Dismissal or
    Transfer of This Action........................................................................................7

        A.    The Forum Selection Clauses Are Inapplicable to This Core
        Proceeding................................................................................................7

        B.    Even if the Forum Selection Clauses Are Enforceable,
        Dismissal and Transfer Are Not Warranted................................................13

    II.    This Court Need Not and Should Not Abstain From Resolving the
    Issues In This Core Adversary Proceeding...........................................................18

        A.    Mandatory Abstention Does Not Apply. ...................................................18

        B.    Permissive Abstention Is Not Warranted...................................................21

CONCLUSION...................................................................................................................31

# TABLE OF AUTHORITIES

**Cases**

*In re III Enterprises, Inc. V,*
    163 B.R. 453 (Bankr. E.D. Pa. 1994) ..........................................................................12

*Agent Systems, Inc. v. Capital Metropolitan Transportation Authority*
    *(In re Agent Systems, Inc.),*
    289 B.R. 828 (Bankr. N.D. Tex. 2002)........................................................................12

*Allied Mechanical and Plumbing Corp. v. Dynamic Hostels Housing Development*
    *Fund Co. (In re Allied Mechanical & Plumbing Corp.),*
    62 B.R. 873 (Bankr. S.D.N.Y. 1986) ..........................................................................19

*All American Laundry Service v. Ascher (In re Ascher),*
    128 B.R. 639 (Bankr. N.D. Ill. 1991) ............................................................9, 20, 23

*Atlantic Marine Construction Co. v. U.S. District Court for Western District of Texas,*
    134 S. Ct. 568 (2013)...................................................................................................14

*Beeter v. Sawyer Disposal LLC,*
    771 N.W.2d 282 (N.D. 2009) ......................................................................................24

*Bies v. Obregon,*
    558 N.W.2d 855 (N.D. 1997) ......................................................................................10

*Bowles v. Massey Energy Co.,*
    No. 2:12-cv-05997, 2012 WL 6628953 (S.D. W. Va. Dec. 19, 2012) ........................13

*In re Buxton,*
    No. 08-25571-EPK,2011 WL 4501159, (Bankr. S.D. Fla. Apr. 8, 2011) ...................30

*Colorado River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976)....................................................................................................21

*Commonwealth of Puerto Rico. v. Commonwealth Oil Refining Co. (In re Commonwealth*
    *Oil Refining Co.),*
    596 F.2d 1239 (5th Cir. 1979) ....................................................................................16

*Crown Village Farm, LLC v. Arl, L.L.C., (In re Crown Village Farm, LLC),*
    415 B.R. 86 (Bankr. D. Del. 2009) .............................................................9, 21, 22, 23

*DHP Holdings II Corp. v. The Home Depot, Inc. (In re DHP Holdings II Corp.),*
    435 B.R. 264 (Bankr. D. Del. 2010) .......................................................8, 15, 16, 17

*In re Direct Response Media, Inc.,*
    466 B.R. 626 (Bankr D. Del. 2012) ...........................................................................22

*Doyle v. Deutsche Bank National Trust Co. (In re Doyle)*,
    No. CIV-14-0951-M, 2015 WL 2128140 (W.D. Okla. May 6, 2015)........................26

*Eastern Air Lines, Inc. v. International Association of Machinists & Aerospace Workers
    (In re Ionosphere Clubs, Inc.)*,
    108 B.R. 951 (S.D.N.Y. 1989).............................................................................20, 23

*In re Exide Technologies*,
    544 F.3d 196 (3d Cir. 2008)...................................................................................8

*FKF Madison Group Owner LLC v. 18 East 23rd Street Realty Company LLC (In re
    FKF Madison Park Group Owner, LLC)*,
    No. 10-11867(KG), 2012 WL 174342 (Bankr. D. Del. 2012)...................................30

*Frelin v. Oakwood Homes Corp.*,
    292 B.R. 369 (Bankr. E.D. Ak. 2003).........................................................................30

*Fruit of the Loom, Inc. v. Magnetek, Inc. (In re Fruit of the Loom, Inc.)*,
    407 B.R. 593 (Bankr. D. Del. 2009) .......................................................................29

*Giuliano v. Genesis Financial Solutions, Inc. (In re Axiant), LLC*,
    No. 09-14118 (MFW), 2012 WL 5614588 (Bankr. D. Del. Nov. 15, 2012)...............14

*Golden v. SM Energy Co.*,
    826 N.W.2d 610 (N.D. 2013) ...............................................................................24

*Great American Insurance Company v. Mobile Tool International, Inc. (In re Mobile
    Tool International)*,
    320 B.R. 552 (Bankr. D. Del. 2005) ..................................................................18, 22

*Gregory Rock House Ranch, LLC v. New Mexico State Engineer (In re Gregory Rock
    House Ranch, LLC)*,
    339 B.R. 255 (Bankr. D.N.M. 2006) .......................................................................13

*Grocery Haulers, Inc. v. Great Atlantic & Pacific Tea Co. (In re Great Atlantic & Pacific
    Tea Co.)*,
    467 B.R. 44 (S.D.N.Y. 2012).................................................................................12

*Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest
    Products Corp.)*,
    896 F.2d 1384 (2d Cir. 1990)..............................................................................9, 16

*Gwynedd Properties, Inc. v. Lower Gwynedd Township*,
    970 F.2d 1195 (3d Cir. 1992).................................................................................21

*Hechinger Investment Co. of Delaware, Inc. v. M.G.H. Home Improvement, Inc. (In re
    Hechinger Investment Co. of Delaware, Inc.)*,
    288 B.R. 398 (Bankr. D. Del. 2003) .......................................................................15

iii

*Hechinger Liquidation Trust v. Fox (In re Hechinger Investment Co. of Delaware, Inc.)*,
    296 B.R. 323 (Bankr. D. Del. 2003) .......................................................................16

*Hopkins v. Plant Insulation Co.*,
    342 B.R. 703 (D. Del. 2006) ..................................................................................30

*HQ Global Workplaces, Inc. v. The Bank of Nova Scotia (In re HQ Global Holdings, Inc.)*,
    293 B.R. 839 (Bankr. D. Del. 2003) ...................................................9, 13, 22, 23, 26

*Jumara v. State Farm Insurance Co.*,
    55 F.3d 873 (3d Cir. 1995)......................................................................................15

*Knopfler v. Schraiber (In re Schraiber)*,
    97 B.R. 937 (Bankr. N.D. Ill. 1989) ...........................................................................9

*Kurz v. EMAK Worldwide, Inc.*,
    464 B.R. 635 (D. Del. 2011) ....................................................................................8

*LaRoche Industries, Inc. v. Orica Nitrogen LLC (In re LaRoche Industries)*,
    312 B.R. 249 (Bankr. D. Del. 2004) ...................................................................29, 30

*Lemonis v. Doerge Capital Collateralized Bridge Fund, L.P. (In re Holiday RV Superstores Inc.)*,
    362 B.R. 126 (D. Del. 2007) ..................................................................................29

*In re Longview Power, LLC*,
    516 B.R. 282 (Bankr. D. Del. 2014) ...................................................................18,19

*Mayeres v. BAC Home Loans*,
    No. 10-44816 (MBK), 2011 WL 2945833 (Bankr. D.N.J. July 21, 2011)............26, 31

*Mercury Masonry Corp. v. Terminal Construction Corp. (In re Mercury Masonry Corp.)*,
    114 B.R. 35 (Bankr. S.D.N.Y. 1990) ..........................................................................8

*National Labor Relations Board  v. Bildisco & Bildisco*,
    465 U.S. 513 (1984)..................................................................................................9

*In re Nexus Communications, Inc.*,
    55 B.R. 596 (Bankr. E.D.N.C. 1985) ........................................................................12

*Nickels Midway Pier, LLC  v. Wild Waves, LLC (In re Nickels Midway Pier, LLC)*,
    372 B.R. 218 (D.N.J. 2007) ...............................................................................20, 21

*Official Committee of Unsecured Creditors of Integrated Health Services, Inc. v. Elkins (In re Integrated Health Services, Inc.)*,
    291 B.R. 615 (Bankr. D. Del. 2003) ...................................................................13, 30

*Omna Medical Partners, Inc. v. Carus Healthcare, P.A. (In re Omna Medical Partners, Inc.)*,
No. 00-1493 (MFW), 2000 WL 33712302 (Bankr. D. Del. June 12, 2000) .........28, 30

*Point Blank Solutions, Inc. v. Robbins Geller Rudman & Dowd LLP (In re Point Blank Solutions, Inc.)*,
449 B.R. 446 (Bankr. D. Del. 2011) ...........................................................................12

*PSINet, Inc. v. Cisco Systems Capital Corp. (In re PSINet, Inc.)*,
271 B.R. 1 (Bankr. S.D.N.Y. 2001) ............................................................................12

*Republic Underwriters Insurance Co. v. DBSI Republic, LLC (In re DBSI, Inc.)*,
409 B.R. 720 (Bankr. D. Del. 2009) ...........................................................9, 11, 23, 29

*State ex rel. Roberts v. Mushroom King, Inc.*,
77 B.R. 813 (D. Or. 1987) ...........................................................................................26

*Sabine Oil & Gas Corp. v. HPIP Gonzales Holdings, LLC (In re Sabine Oil & Gas Corp.)*,
550 B.R. 59 (Bankr. S.D.N.Y. 2016) ..........................................................................23

*Sabine Oil & Gas Corp. v. HPIP Gonzales Holdings, LLC (In re Sabine Oil & Gas Corp.)*,
551 B.R. 132 (Bankr. S.D.N.Y. 2016) ...................................................................24, 25

*In re Salander O'Reilly Galleries*,
453 B.R. 106 (Bankr. S.D.N.Y. 2011) ........................................................................12

*Salovaara v. Jackson Nat'l Life Ins. Co.*,
246 F.3d 289 (3d Cir. 2001)........................................................................................14

*Samson Resources Co. v. J. Aron & Co. (In re Semcrude, L.P.)*,
No. 08-11525 (BLS), 2010 WL 5140487 (Bankr. D. Del. Dec. 13, 2010)............19, 25

*Sargent County Bank v. Wentworth (In re Wentworth)*,
No. 88-05068, ADV. 88-7055, 1988 WL 1014966 (Bankr. D.N.D. June 13, 1988)...31

*State ex. rel. Sprynczynatyk v. Mills*,
523 N.W.2d 537 (N.D. 1994) ......................................................................................11

*Statutory Committee of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*,
285 B.R. 822 (S.D.N.Y. 2002).......................................................................................8

*Steinman v. Spencer  (In re Argus Group 1800, Inc.)*,
206 B.R. 737 (Bankr. E.D. Pa. 1996) .........................................................................30

*Stoe v. Flaherty,*
    436 F.3d 209 (3d Cir. 2006)..................................................................................8, 20

*Sun Healthcare Group, Inc. v. Levin (In re Sun Healthcare Group, Inc.),*
    267 B.R. 673 (Bankr. D. Del. 2000) ................................................................21

*Sweeney v. Citicorp Person-to-Person Financial Center, Inc. (In re Sweeney),*
    49 B.R. 1008 (N.D. Ill. 1985) ........................................................................26

*In re Transcom Enhanced Services, LLC,*
    427 B.R. 585 (Bankr. N.D. Tex. 2005)...........................................................12

*Trans World Airlines, Inc. v. Icahn (In re Trans World Airlines, Inc.),*
    278 B.R. 42 (Bankr. D. Del. 2002) .................................................................21

*U.S. Lines, Inc. v. American Steamship Owners Mutual Protection and
    Indemnity Association, Inc. (In re U.S. Lines, Inc.),*
    197 F.3d 631 (2d Cir. 1999)............................................................................12

*United States Trustee v. Gryphon at the Stone Mansion, Inc.,*
    166 F.3d 552 (3d Cir. 1999)..............................................................................8

*Verity v. Wells Fargo Bank, N.A. (In re Verity),*
    No. 10-20880 (DHS), 2012 WL 3561669 (Bankr. D.N.J. Aug. 16, 2012)................26

*Wells Fargo Bank N.A. v. Johnson,*
    No. CIV. 11-1205-SLR, 2012 WL 1203427 (D. Del. Apr. 4, 2012) ..........................30

*Wheeler v. Southport Seven Planned Unit Development,*
    821 N.W.2d 746 (N.D. 2012) .........................................................................24

*Wheeling-Pittsburgh Steel Corp. v. Blue Cross and Blue Shield of West Virginia
    (In re Wheeling-Pittsburgh Steel Corp.),*
    108 B.R. 82 (Bankr. W.D. Pa. 1989) ...............................................................8

## Statutes and Rules

28 U.S.C. § 157(b)(2)(A) .....................................................................................8

28 U.S.C. § 157(b)(2)(O) .....................................................................................8

28 U.S.C. § 157(b)(3) .........................................................................................8

28 U.S.C. § 1409(a) ..........................................................................................14

Bankruptcy Rule 7012(b)(3) ...............................................................................4

Bankruptcy Rule 7087 .......................................................................................14

Federal Rule 12(b)(3)...............................................................................................4, 5, 13, 14

N.D. Cent. Code. § 47-04-26 ................................................................................................24

Triangle USA Petroleum Corporation ("**TUSA**" and together with its debtor affiliates, the "**Debtors**") respectfully submits this opposition brief to the motion of Caliber Measurement, Caliber Midstream Fresh Water, and Caliber North Dakota (collectively, "**Caliber**") for dismissal, or, in the alternative, transfer for improper venue, or, alternatively, for dismissal or a stay based on abstention (the "**Motion**").[1]

## PRELIMINARY STATEMENT

As explained since the day the Debtors filed their Chapter 11 Cases, this restructuring has two main objectives:  the Debtors must deleverage their balance sheet, and they must realign their economically burdensome "midstream services" agreements with market realities. As to the first objective, the Debtors entered Chapter 11 with the support of their unsecured noteholders for a plan construct under which the noteholders would equitize their debt and also provide significant new capital for the business going forward. As to the second objective, the Debtors' strong preference is to negotiate a commercial resolution and enter into new contracts with their midstream services provider, Caliber. But, as estate fiduciaries, the Debtors must also proceed to avail themselves of the tools available under the Bankruptcy Code to address contracts that are, on present terms, an above-market drag on the estate.

---

[1]  All references to "D.I." refer to the docket for the Debtors' Chapter 11 Cases, Case No. 16-11566 (MFW). All references to "Adv. D.I." refer to the docket for this adversary proceeding. Capitalized terms not otherwise defined have the meaning ascribed to them in the sealed Complaint for Declaratory Judgment (the "**Complaint**" or "**Compl.**") (Adv. D.I. 3). TUSA also filed a redacted version of the Complaint at Adv. D.I. 1. References to "MTD Mem." refer to the Caliber's Memorandum in Support of the Motion to Dismiss or, in the Alternative, Transfer the Adversary Proceeding Complaint for Improper Venue, or for Abstention and Dismissal (Adv. D.I. 9).

To that end, TUSA has filed a motion to reject its midstream agreements with Caliber (the "**Rejection Motion**"). (*See* D.I. 67.) At the same time, TUSA filed this adversary proceeding to obtain a ruling that the midstream agreements do not contain covenants that "run with the land."  The question presented in this case could not be more closely intertwined with the Rejection Motion because the effectiveness of the Debtors' contract rejection right will be determined in large part by whether or not the agreements contain such covenants. Indeed, as Caliber acknowledges, answering the question in this case is, for all practical purposes, a "prerequisite to resolution" of the Rejection Motion. (MTD Mem. ¶ 50.)

Putting these concepts together, it is easy to see that the resolution of this adversary proceeding will be a—if not *the*—primary driver of how the Debtors' restructuring unfolds. The Debtors' two restructuring objectives are obviously inter-related:  their ability to satisfy debt claims with new equity, and to raise additional equity funding on top of that, will be largely influenced by the Debtors' success in reconfiguring their cost structure so that they can emerge as a competitive company in a challenging commodities pricing environment. And whether and to what extent the Debtors can realign their midstream contracts to address their cost structure will be largely influenced by the resolution of this action.

Caliber anticipated this reality, and has taken steps to limit TUSA's ability to resolve these questions through the Chapter 11 process. One month before the Debtors commenced their Chapter 11 Cases, Caliber North Dakota, one of the defendants here, preemptively filed a lawsuit against TUSA in the District Court, Northwest Judicial District in the County of McKenzie for the State of North Dakota (the "**North Dakota**

2

**Action**"). It did so based on information it learned in confidential discussions with TUSA and its affiliates designed to *avoid* bankruptcy, and after making a promise that it would not use the information for any purpose other than those discussions. In fact, Caliber's own complaint essentially acknowledges that the North Dakota Action was filed to preempt a potential bankruptcy,[2] and thereby prevent this Court—the proper forum to determine the Debtors' right to reject their midstream agreements, including the closely related issues raised in the North Dakota Action and this adversary proceeding—from resolving these questions.

Caliber's present motion to dismiss or transfer this action is the expected next step in its attempt to tie the Debtors' hands in this restructuring. If Caliber's Motion is granted, the Rejection Motion will be practically out of the control of this Court, and the Debtors will be largely stripped of the important contract rejection right available to them under the Bankruptcy Code. The dynamics of the restructuring will undeniably shift, and the Debtors' ability to attain their two major restructuring objectives will be hampered. This is not hyperbole, but, rather, the blunt truth.

Fortunately, these consequences to TUSA's restructuring can be avoided because the legal basis for Caliber's Motion is flawed. For the reasons set forth below, this Court can and should deny Caliber's Motion, and proceed to determine this adversary proceeding and then the Rejection Motion. TUSA believes that the litigation can be

---

[2]    (*See* North Dakota Action Compl. ¶ 19, attached as Ex. A to the MTD Mem. ("should TUSA have to commence a bankruptcy case . . . TUSA intends to . . . 'reject' [the contracts] under section 365 of the Bankruptcy Code").)

completed in this Court by the end of the year,[3] during which time the Debtors will also continue to pursue their preferred path, which is a global, consensual resolution to their major restructuring objectives.

**NATURE AND STAGE OF PROCEEDING**

The Debtors commenced their Chapter 11 cases on June 29, 2016. On July 5, 2016, the Debtors filed a motion seeking authorization to reject the six Specified Caliber Contracts pursuant to Bankruptcy Code section 365(a). In connection with the Rejection Motion, TUSA also commenced this adversary proceeding against Caliber, seeking a declaratory judgment that the Specified Caliber Contracts do not contain covenants or equitable servitudes that run with the land. Caliber has moved to dismiss or transfer this adversary proceeding for improper venue and dismiss or stay on abstention grounds.

**SUMMARY OF ARGUMENT**

1.       This adversary proceeding stems from a substantive right created by federal bankruptcy law—the right to assume or reject executory contracts under Bankruptcy Code section 365. Because this action is intricately intertwined with the Rejection Motion, it is a core proceeding, rendering the forum selection clauses in the Specified Caliber Contracts (the "**Forum Selection Clauses**") inapplicable.

2.       Even if this were a non-core proceeding and the Forum Selection Clauses were applicable, they do not render venue in this Court improper under Rule 12(b)(3) of the Federal Rules of Civil Procedure (the "**Federal Rules**") or Bankruptcy Rule 7012(b)(3) because this proceeding is, at a minimum, related to the Chapter 11 Cases.

---

[3]    TUSA has already proposed a schedule to Caliber to accomplish this objective, and intends to bring the matter before this Court in a scheduling conference in the near future.

Dismissal under Federal Rule 12(b)(3) is therefore inappropriate. Transfer of this action is also not warranted because the interests of justice weigh in favor of retaining venue in this Court where the Chapter 11 Cases are pending.

3.     This Court is not required to abstain under 28 U.S.C. § 1334(c)(2) because (i) this is a core proceeding; (ii) there is no state court proceeding pending involving two of the three defendants; and (iii) Caliber has not established, nor can it establish, that the North Dakota Action can be timely resolved in the North Dakota State Court.

4.     This Court should not abstain under 28 U.S.C. § 1334(c)(1) because this is a core proceeding, the resolution of which will determine not only the form of the Debtors' overall restructuring, but the resulting treatment of a majority of its stakeholders. Abstaining would have a detrimental effect on the administration of the Debtors' estate and the Debtors' ability to complete their restructuring.

## STATEMENT OF FACTS

**The North Dakota Action**

Over a month before the Debtors commenced the Chapter 11 Cases, Defendant Caliber North Dakota filed the North Dakota Action seeking a declaratory judgment that certain dedications in the Gas and Water MSA and the Crude Oil MSA (the "**MSAs**") constitute valid and enforceable covenants running with the land under North Dakota law. (*See* North Dakota Action Compl. ¶ 19, attached as Ex. A to the MTD Mem., Adv. D.I. 9-1.) The North Dakota Action was filed in express contemplation of a future TUSA bankruptcy filing. (*Id.* ¶¶ 14-16.) In the North Dakota Action, Caliber North Dakota alleges—based on conversations with TUSA and its affiliates—that

> should TUSA have to commence a bankruptcy case . . . TUSA intends to (i) breach the MSAs by seeking bankruptcy court approval to 'reject' them under section 365 of the Bankruptcy Code and (ii) seek a ruling from a

> federal bankruptcy court that the [d]edications [in the MSAs] are not valid and enforceable covenants running with the land under North Dakota law, as recently exemplified by a ruling in the chapter 11 bankruptcy case of Sabine Oil & Gas Corp.

(*Id.* ¶ 16.) At the time, TUSA had not filed a bankruptcy petition. In fact, TUSA and certain of its affiliates were in discussions with their respective stakeholders, including First Reserve Caliber Holdings LLC ("**First Reserve**"), an affiliate of Caliber, regarding a potential consensual restructuring or recapitalization. (*See* Declaration of John R. Castellano in Support of Chapter 11 Petitions & First Day Papers ("**Castellano First Day Decl.**") at ¶¶ 49, 51, D.I. 13.) In connection with those discussions, First Reserve had agreed, in writing, that it would keep all such discussions confidential and would not use any information it obtained "for any purpose other than in connection with evaluating and negotiating a Potential Transaction." (Ex. A (Non-Disclosure Agreement) ¶ 5; Ex. B (Notice of Violation of Non-Disclosure Agreement) at 1.) Nonetheless, based on those discussions, and in an effort to preempt a potential bankruptcy court proceeding, First Reserve caused Caliber North Dakota to file the premature North Dakota Action. (*See* Ex. B.) TUSA has since removed that action to the U.S. District Court for the District of North Dakota (the "**North Dakota Federal Court**"), moved to transfer the action to this Court, and also moved to dismiss the action for lack of case or controversy at the time the action was filed. *See Caliber North Dakota LLC v. Triangle USA Petroleum Corp.*, No. 1:16-cv-00261-DLH-CSM (D.N.D.), Dkt Nos. 1, 2, 5. Caliber North Dakota has opposed the transfer and dismissal and moved to remand the action back to the North Dakota State Court. *Id.* at Dkt Nos. 8, 15-16. The North Dakota Action is presently stayed.

**The Chapter 11 Case**

The Debtors commenced these Chapter 11 Cases to achieve two principal objectives: deleverage the Debtors' balance sheet and realign the Debtors' "midstream" gathering, transportation, and processing contracts with market realities. (*See* Castellano First Day Decl. at 10 n.10, ¶ 37.) In furtherance of these objectives, the Debtors filed the Rejection Motion, seeking authorization to reject one or more of the Specified Caliber Contracts, which the Debtors believe would be a sound business judgment and beneficial to their estates. (D.I. 67.) Resolution of the Rejection Motion is critical, not only to the success of the restructuring but to "the Debtors' overarching objective of emerging from bankruptcy with a strong foundation for long-term growth and profitability." (Declaration of John Castellano in Support of Rejection Motion ("**Castellano Rejection Mot. Decl.**") at ¶ 20, D.I. 128.) Because the utility and effect of any rejection largely depends on whether the Specified Caliber Contracts contain real property covenants, TUSA initiated this adversary proceeding seeking a declaratory judgment that the Specified Caliber Contracts do not contain covenants or equitable servitudes that run with the land. (Compl. ¶¶ 38-61, Adv. D.I. 1.)

## ARGUMENT

**I.    The Forum Selection Clauses Do Not Warrant Dismissal or Transfer of This Action.**

    **A.    The Forum Selection Clauses Are Inapplicable to This Core Proceeding.**

Caliber asserts that this Court should dismiss or, alternatively, transfer this action to the North Dakota Federal Court pursuant to the Forum Selection Clauses. Neither action is warranted because this adversary proceeding falls within this Court's core jurisdiction, thereby rendering the Forum Selection Clauses unenforceable. *See In re*

*Exide Techs.*, 544 F.3d 196, 206 (3d Cir. 2008) ("Whether claims are considered core or non-core proceedings dictates . . . the enforcement of forum selection clauses."); *Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635, 641-42 (D. Del. 2011) ("[T]his Court concludes that forum selection clauses are unenforceable when the state action falls within a bankruptcy court's core jurisdiction."); *DHP Holdings II Corp. v. Home Depot, Inc. (In re DHP Holdings II)*, 435 B.R. 264, 269-70 (Bankr. D. Del. 2010) (noting that "[c]ourts are more likely to enforce a forum selection clause in a non-core matter").[4]

A claim is considered core if it invokes a substantive right created by federal bankruptcy law or if it would "have no existence outside of the bankruptcy." *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006) (quoting *United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999)); *see also In re Exide Techs.*, 544 F.3d at 206. Core proceedings include, but are not limited to, "matters concerning the administration of the estate," and "proceedings affecting . . . the adjustment of the debtor-creditor . . . relationship." 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(O).

Caliber contends that this adversary proceeding is non-core because it is "purely a 'state law claim.'" (MTD Mem at 11.) Not so. Section 157 itself provides that a

---

[4]    *See also Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822, 837 (S.D.N.Y. 2002) (concluding that "the interests of justice and the public interest in the centralization of all bankruptcy proceedings" justified non-enforcement of a forum selection clause); *Mercury Masonry Corp. v. Terminal Constr. Corp. (In re Mercury Masonry Corp.)*, 114 B.R. 35, 39 (Bankr. S.D.N.Y. 1990) ("[E]nforcement of the forum selection clause would violate the public's interest in centralizing bankruptcy proceedings in the bankruptcy court where the case is pending."); *Wheeling-Pittsburgh Steel Corp. v. Blue Cross & Blue Shield of W. Va., Inc. (In re Wheeling-Pittsburgh Steel Corp.)*, 108 B.R. 82, 85 (Bankr. W.D. Pa. 1989) (noting that "[p]ublic policy favors centralization of bankruptcy proceedings in the bankruptcy court where the case is pending" and proceeding on related claims in two separate forums "is a manifest inconvenience for the parties and the court system").

"determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3); *see also Crown Village Farm, LLC v. Arl, L.L.C. (In re Crown Village Farm, LLC)*, 415 B.R. 86, 96 (Bankr. D. Del. 2009) ("Although Defendants are correct that the Adversary Proceeding involves questions of [state] law, 28 U.S.C. § 157(b)(3) establishes that the presence of issues affected by state law does not alter the core nature of a proceeding."). As this Court has recognized, "the relevant inquiry is whether the nature of the adversary proceeding, rather than the state or federal basis for the claim, falls with the core of the federal bankruptcy power." *HQ Global Workplaces, Inc. v. The Bank of Nova Scotia (In re HQ Global Holdings, Inc.)*, 293 B.R. 839, 842 (Bankr. D. Del. 2003) (quoting *Gulf States Exploration Co. v. Manville Forest Prods. Corp.*, 896 F.2d 1384, 1389 (2d Cir. 1990)). Indeed, because "analysis of state law issues . . . is an integral part" of a bankruptcy court's daily work, were bankruptcy courts "to lack authority to decide such issues . . . much of [their] work would grind to a halt so as to defer to litigation on crowded state dockets." *All Am. Laundry Serv. v. Ascher (In re Ascher)*, 128 B.R. 639, 643 (Bankr. N.D. Ill. 1991) (quoting *Knopfler v. Schraiber (In re Schraiber)*, 97 B.R. 937, 940 (Bankr. N.D. Ill. 1989)).

While the Complaint raises a state law issue, this action stems from a substantive right created by federal bankruptcy law—the right to assume and reject executory contracts under Bankruptcy Code section 365. *See Nat'l Labor Relations Bd. v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984)); *Republic Underwriters Ins. Co. v. DBSI Republic, LLC (In re DBSI, Inc.)*, 409 B.R. 720, 728 (Bankr. D. Del. 2009) (the "rejection and assumption . . . [of] executory contracts are fundamental issues of bankruptcy law unique

9

to the Bankruptcy Code"). The Debtors filed their Rejection Motion, seeking authorization to reject the Specified Caliber Contracts. The utility of the pending Rejection Motion—a vital component of the Debtors' restructuring—turns on the question of whether the contracts contain real property interests that run with the land. Thus, resolution of the issues presented in this adversary proceeding is, as Caliber acknowledges, for all practical purposes, a "prerequisite to resolution" of the Rejection Motion. (MTD Mem. ¶ 50.)

Put differently, this dispute could not exist as a justiciable case or controversy in this Court or in North Dakota outside of the context in which it arose: the Debtors' efforts to address their uneconomic midstream agreements by rejecting them in this Court as they are authorized to do under the Bankruptcy Code. Caliber knows this. While Caliber's Motion strategically minimizes any mention of the Debtors' Rejection Motion, Caliber took a very different approach in the North Dakota Action. Its complaint in that action touted the prospect of a TUSA bankruptcy—in which TUSA might seek to reject the midstream agreements—in an effort to establish that an actual case or controversy existed. Caliber correctly perceived that an abstract dispute concerning the state-law issue would not give rise to a justiciable claim except as it relates to TUSA's right to reject executory contracts in bankruptcy.[5] The point is, Caliber's action in North Dakota had

---

[5]    Caliber's efforts to establish a case or controversy in the North Dakota Action, nonetheless fails, as TUSA set forth at length in briefing its motion to dismiss. *See* Mem. in Support of Triangle USA Petroleum Corporation's Mot. to Dismiss, *Caliber North Dakota LLC v. Triangle USA Petroleum Corp.*, No. 1:16-cv-00261-DLH-CSM (July 13, 2016), Dkt No. 6. Because the North Dakota Action was dependent on future contingencies at the time it was filed—*i.e.* TUSA filing for bankruptcy and moving to reject the midstream agreements—there was no case or controversy ripe for adjudication. *See Bies v. Obregon*, 558 N.W.2d 855, 858 (N.D. 1997) ("An issue is not ripe for review if it depends on future contingencies which, although they might
*(cont'd)*

everything to do with jumping ahead of this Court's consideration of a contract rejection issue, and there can be no dispute that this case is intertwined with TUSA's contract rejection right.

State contract law disputes are core proceedings where the dispute is directly related to a motion to assume or reject a contract under Bankruptcy Code section 365. For example, in *DBSI*, Judge Walsh considered whether a state court declaratory judgment action challenging the effect of the debtors' rejection and assumption of certain leases and subleases pursuant to Bankruptcy Code section 365 should be remanded to Texas state court under mandatory or permissive abstention. 409 B.R. at 727-28. In denying the plaintiff's request for remand, the bankruptcy court concluded that the declaratory judgment action was core, noting that the "rejection and assumption . . . [of] executory contracts are fundamental issues of bankruptcy law unique to the Bankruptcy Code," and the plaintiff "would have no claim but for [the] bankruptcy filing and the orders entered in this Court as to that filing." *Id.* at 728. Other courts have similarly held that state law claims are core proceedings where the action is "intertwined" with those raised in connection with assumption or rejection of a contract:

> [B]y filing a motion to assume the Contract, Debtor triggered this court's core jurisdiction over other proceedings dealing with the same subject matter, including the adversary proceeding. The issues raised in the adversary proceeding would necessarily be intertwined with those raised in connection with assumption. As the assumption of an executory

_____

*(cont'd from previous page)*

occur, necessarily may not, thus making addressing the question premature."); *State ex. rel. Sprynczynatyk v. Mills*, 523 N.W.2d 537, 544 (N.D. 1994) ("Merely because a proceeding is brought in the context of a declaratory judgment action does not eliminate the requirement of an actual controversy. . . . It is well established that courts will not give advisory opinions if there is no actual controversy to be determined.").

> contract or unexpired lease is a core proceeding, the adversary should be
> treated as one as well.

*Agent Sys., Inc. v. Capital Metro. Transp. Auth. (In re Agent Sys., Inc.)*, 289 B.R. 828,

833 (Bankr. N.D. Tex. 2002); *see also U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. &

Indem. Assoc., Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631, 638 (2d Cir. 1999)

("Notwithstanding that the Trust's claims are [based] upon pre-petition contracts, we

conclude that the impact these contracts have on other core bankruptcy functions

nevertheless render the proceedings core."); *Point Blank Sols., Inc. v. Robbins Geller

Rudman & Dowd LLP (In re Point Blank Sols.)*, 449 B.R. 446, 450 (Bankr. D. Del. 2011)

(concluding that claims for declaratory relief that arise "directly from the substantive

bankruptcy law right to reject executory contracts" are core matters concerning

administration of the estate); *In re Nexus Commc'ns, Inc.*, 55 B.R. 596, 598 (Bankr.

E.D.N.C. 1985) ("The determination of the [state law] dispute concerning the status of a

lease is a necessary part of the bankruptcy court's determination of the motion to assume

the lease, and thus, it is an integral part of the administration of the case. As such, it is

part of a core proceeding.").[6]

---

[6]    *See also Grocery Haulers, Inc. v. Great Atl. & Pac. Tea Co. (In re Great Atl. & Pac.
Tea Co.)*, 467 B.R. 44, 58 (S.D.N.Y. 2012) (concluding that claims "arose in" chapter
11 cases because the debtors "right to reject executory contracts under Section 365 is
'based on a right created by the Bankruptcy Code' and thus claims flowing from such
a right 'can only be brought in a case under the Bankruptcy Code'" (quoting *In re
Salander O'Reilly Galleries*, 453 B.R. 106, 114 (Bankr. S.D.N.Y. 2011))); *In re
Transcom Enhanced Servs., LLC*, 427 B.R. 585, 589 (Bankr. N.D. Tex. 2005)
(concluding that disputed contract issue was an "important part of the assumption
motion" and would "directly affect" the bankruptcy court's "core administrative
function" (citation omitted)); *PSINet, Inc. v. Cisco Sys. Capital Corp. (In re PSINet,
Inc.)*, 271 B.R. 1, 6 (Bankr. S.D.N.Y. 2001) (concluding that the outcome of the
declaratory judgment action would determine rights of the debtor and its lessor under
the Bankruptcy Code and "will determine, at least in substantial part, whether or not
these nominal equipment leases are executory contracts to be assumed"); *In re III
(cont'd)*

Because this action is "intertwined" with the Rejection Motion and would have no existence outside the bankruptcy, the cases cited by Caliber are inapposite. *See Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins (In re Integrated Health Servs., Inc.)*, 291 B.R. 615, 618 (Bankr. D. Del. 2003) (concluding that adversary proceeding alleging breach of fiduciary duty and waste of corporate assets against debtors' current and former officers and directors was non-core); *Bowles v. Massey Energy Co.*, No. 2:12-cv-05997, 2012 WL 6628953, at *10 (S.D.W. Va. Dec. 19, 2012) (concluding that action, which had been pending in state court for nearly three years before bankruptcy filing, could not have arisen in a chapter 11 case); *Gregory Rock House Ranch, LLC v. N.M. State Eng'r (In re Gregory Rock House Ranch, LLC)*, 339 B.R. 255, 259 (Bankr. D.N.M. 2006) (resolution of action involving state water law was not intricately related to core bankruptcy function).

Because this adversary proceeding and the claims therein would not exist but for the Rejection Motion, this is a core proceeding, making the Forum Selection Clauses unenforceable.

### B.    Even if the Forum Selection Clauses Are Enforceable, Dismissal and Transfer Are Not Warranted.

Even if this adversary proceeding did involve non-core claims—which it does not—dismissal is not warranted under Federal Rule 12(b)(3). The U.S. Supreme Court

---

*(cont'd from previous page)*

   *Enters., Inc. V*, 163 B.R. 453, 459 (Bankr. E.D. Pa. 1994) (concluding that the determination "of the existence and enforceability of the underlying contract"— which would be based on state law—were "threshold issues the resolution of which is absolutely essential to the adjudication" of the assumption motion); *accord HQ Global Holdings*, 293 B.R. at 844 (this Court had core jurisdiction to hear adversary proceeding seeking declaration that lease was terminated pre-petition because it directly impacted the allowance of claims and potential claims against the estate).

has made clear that "a forum-selection clause does not render venue in a court . . . 'improper' within the meaning of . . . Rule 12(b)(3)." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 579 (2013) (stating that "a forum-selection clause has *no bearing*" on whether venue is improper (emphasis added)). Instead, "[w]hether venue is . . . 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Id.* at 577. Here, there is no doubt that this Court satisfies the requirements of federal venue laws. Section 1409 of title 28 of the United States Code places venue for "proceeding[s] arising under title 11 or arising in or related to a case under title 11" in the district court in which such case is pending. 28 U.S.C. § 1409(a). And, pursuant to 28 U.S.C. 157(a) and the *Amended Standing Order of Reference* from the District of Delaware dated February 29, 2012, all such cases are automatically referred to the bankruptcy judges for this district. Because this case is, at a minimum, related to the Chapter 11 Cases,[7] venue is proper in this Court, and Federal Rule 12(b)(3) is not applicable.[8]

Caliber next argues that if the Court determines that dismissal is not warranted, it should instead transfer this action to the North Dakota Federal Court. While Caliber does not cite the specific statutory provision underlying their request to transfer, 28 U.S.C. §

---

[7]    While the parties disagree over whether this action arises in the Debtors' Chapter 11 Cases, Caliber does not dispute that this action is, at a minimum, related to the Chapter 11 Cases. (*See* MTD Mem. ¶ 23.)

[8]    Caliber cites the Third Circuit's opinion in *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289 (3d Cir. 2001), and this Court's opinion in *Giuliano v. Genesis Fin. Sols., Inc. (In re Axiant), LLC*, No. 09-14118 (MFW), 2012 WL 5614588 (Bankr. D. Del. Nov. 15, 2012), to support their argument that forum selection clauses render dismissal appropriate. Both cases, however, were decided *before* the U.S. Supreme Court's 2013 pronouncement in *Atlantic Marine Construction*.

14

1412 provides for the "transfer [of] a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." *See also* Bankruptcy Rule 7087 ("On motion and after a hearing, the court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412."). As this Court has made clear, while a valid forum selection clause is significant in the transfer analysis, it is not determinative. *DHP Holdings*, 435 B.R. at 269. Instead, the "court should consider all relevant factors and has discretion to determine 'on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer.'" *Id.* (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995)); *see also Hechinger Liquidation Trust v. Fox (In re Hechinger Inv. Co. of Del., Inc.)*, 296 B.R. 323, 325 (Bankr. D. Del. 2003) (hereinafter *Hechinger I*) ("The decision of whether venue should be transferred lies within the sound discretion of the Court."). Generally, bankruptcy courts in the Third Circuit consider twelve factors in assessing whether to transfer venue under 28 U.S.C. § 1412:

> (1) plaintiff's choice of forum, (2) defendant's forum preference, (3) whether the claim arose elsewhere, (4) the location of books and records and/or the possibility of viewing the premises if applicable, (5) the convenience of the parties as indicated by their relative physical and financial condition, (6) the convenience of witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (7) the enforceability of the judgment; (8) practical considerations that would make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from congestion of the courts' dockets, (10) the public policies of the fora, (11) the familiarity of the judge with the applicable state law, and (12) the local interest in deciding local controversies at home.

*Hechinger I*, 296 B.R. at 325.

Here, most of the factors either disfavor transfer or are neutral. *First*, there is a "strong presumption in favor of maintaining venue where the bankruptcy case is

pending." *Hechinger Inv. Co. of Del., Inc. v. M.G.H. Home Improvement, Inc. (In re Hechinger Inv. Co. of Del., Inc.*, 288 B.R. 398, 402 (Bankr. D. Del. 2003); *see also DHP Holdings*, 435 B.R. at 275 ("[T]he district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." (quoting *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990))). Such a presumption is warranted here because resolution of this matter in the same forum as the Debtors' Chapter 11 Cases will promote the economic and efficient administration of the Debtors' bankruptcy estate—the most important factor in the transfer analysis. *DHP Holdings*, 435 B.R. at 275 ("[T]he most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate." (quoting *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.)*, 596 F.2d 1239, 1247 (5th Cir. 1979))). Even if the Court ultimately disagrees with TUSA that this is a core proceeding, it cannot be denied that the form of the Debtors' overall restructuring and the resulting treatment of a majority of its stakeholders will be influenced significantly by the resolution of the Rejection Motion and the issues raised in this adversary proceeding. Additionally, Caliber has already indicated its intent to take discovery on both the Rejection Motion and the issues raised in this proceeding. While TUSA believes that such discovery will be limited given the nature of the dispute, it would be inefficient and a waste of judicial resources for two separate courts to be overseeing discovery between these parties. Because this Court has a clear interest in resolving the Rejection Motion, including the closely related issues raised in this adversary proceeding, and because this Court can

16

timely and efficiently resolve this litigation at the same time it is considering the Rejection Motion, factors 3, 8, 9, 10, and 12 all weigh against transfer.

*Second*, litigating this proceeding in North Dakota while the Rejection Motion is litigated in this Court would be inconvenient for the Debtors and other parties in interest to the Chapter 11 Cases. Resolution of this action in North Dakota—which Caliber has not established could be completed in a timely and efficient manner—would, in effect, place the Rejection Motion on hold indefinitely while the parties litigated the issues in North Dakota. While TUSA acknowledges that the Forum Selection Clauses place venue in North Dakota, this Court has stated that even where there are such contractual provisions, the Court should still consider if there is some inconvenience to the parties. *DHP Holdings*, 435 B.R. at 274. Here, there would be. Thus, factor 5 weighs against transfer.[9]

Because the interests of justice weigh in favor of keeping this adversary proceeding in this Court where the Chapter 11 Cases are pending, the Court should deny Caliber's request to transfer this action to the North Dakota District Court.

---

[9]   Factors 4, 6, and 7 are neutral. Because discovery, if any, would largely be limited to "paper exchanges" and e-discovery, the physical location of books and records is not a significant factor. *DHP Holdings*, 435 B.R. at 273-74. There is no indication that witnesses would be unavailable for trial either in this Court or in the North Dakota Federal Court. *Id.* at 274. And finally, because this is a declaratory judgment action, there is no judgment to be enforced.

**II.    This Court Need Not and Should Not Abstain From Resolving the Issues In This Core Adversary Proceeding.**

    **A.    Mandatory Abstention Does Not Apply.**

Caliber has the burden of establishing that abstention is required under 28 U.S.C. § 1334(c)(2). *In re Longview Power, LLC*, 516 B.R. 282, 294 (Bankr. D. Del. 2014). To do so, Caliber must prove each of the following six elements:

> (1) the motion to abstain is timely; (2) the action is based upon a state law claim or cause of action; (3) the action has been commenced in state court; (4) the action can be timely adjudicated; (5) there is no independent basis for federal jurisdiction which would have permitted the action to be commenced in federal court absent bankruptcy; and (6) the matter is non-core.

*Great Am. Ins. Co. v. Mobile Tool Int'l, Inc. (In re Mobile Tool Int'l)*, 320 B.R. 552, 556 (Bankr. D. Del. 2005).

As set forth in section I.A, this adversary proceeding is core, and therefore mandatory abstention does not apply. However, even if this proceeding did involve non-core claims, which it does not, abstention would still not be required under 28 U.S.C. § 1334(c)(2) because Caliber has failed to establish the third and fourth elements.[10]

    1.    <u>Element 3: Proceeding in State Court</u>

TUSA does not dispute that prior to the commencement of the Chapter 11 Cases, Caliber North Dakota filed the North Dakota Action, seeking a declaratory judgment with respect to the Gas and Water MSA and the Crude Oil MSA. That action, however, was prematurely filed before there was any case or controversy to be adjudicated. Moreover, that action does not concern two of the Caliber North Dakota contracts at issue in this

---

[10]    TUSA does not dispute: (a) the motion to dismiss or abstain is timely; (b) the claim is based on state law; and (c) the only basis for original jurisdiction in federal district court is the Chapter 11 Cases.

adversary proceeding—the NGL Handling Agreement and the Revenue Commitment Agreement, nor does it involve Caliber Measurement, Caliber Fresh Water, or their agreements with TUSA (the LACT Agreement and the Fresh Water Agreement). Caliber has thus failed to establish the third element for mandatory abstention.

2.     Element 4: Adversary Proceeding Cannot be Timely Adjudicated in North Dakota State Court

Because Caliber has the burden of presenting *evidence* that each element for mandatory abstention is met, Caliber must do more than make "naked assertion[s] that the matter can be timely adjudicated in the state court." *Samson Res. Co. v. J. Aron & Co. (In re Semcrude, L.P.)*, No. 08-11525 (BLS), 2010 WL 5140487, at *7 (Bankr. D. Del. Dec. 13, 2010) (quoting *Allied Mech. & Plumbing Corp. v. Dynamic Hostels Housing Dev. Fund Co. (In re Allied Mech. & Plumbing Corp.)*, 62 B.R. 873, 878 (Bankr. S.D.N.Y. 1986)) (concluding that moving party failed to carry its burden to show that the claims could be timely adjudicated in state court); *see also Longview Power*, 516 B.R. at 295 (denying request for abstention where the Debtors' reorganization strategy could not move forward absent a ruling on the issues presented in the adversary proceeding and the moving party failed to demonstrate that the state court could timely resolve the issues). Caliber has failed to meet its burden. Apart from noting the North Dakota State Court's "familiarity with North Dakota law," (MTD Mem. ¶ 44), Caliber presents no evidence supporting its claim that this action can be timely adjudicated in the North Dakota State Court.

It is unsurprising that Caliber has failed to present any evidence that the North Dakota State Court could timely resolve this action, as resolution of this matter in the North Dakota State Court will undoubtedly cause a delay in the administration of the

19

Debtors' bankruptcy estate. As discussed above, through their Chapter 11 Cases, the Debtors plan to implement a restructuring that has two principal objectives—deleverage the Debtors' balance sheet and realign the Caliber contracts with market realities. (*See* Castellano First Day Decl. ¶ 22 n.10, ¶ 37.) In furtherance of these objectives, the Debtors have filed the Rejection Motion, the resolution of which is critical to the success of the restructuring. (*See* Castellano Rejection Mot. Decl. at ¶ 20.)

Courts have recognized that in complex reorganizations like the Debtors' Chapter 11 Cases, "timeliness . . . must be determined with respect to the needs of the title 11 case and not solely by reference to the relative alacrity with which the state and federal court can be expected to proceed." *Stoe*, 436 F.3d at 219; *Nickels Midway Pier, LLC v. Wild Waves, LLC (In re Nickels Midway Pier, LLC)*, 372 B.R. 218, 228 (D.N.J. 2007); *see also E. Air Lines, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers (In re Ionosphere Clubs, Inc.)*, 108 B.R. 951, 955 (Bankr. S.D.N.Y. 1989) ("[E]quity favors the unfettered authority of the bankruptcy court to proceed expeditiously and without the time-consuming and costly distraction of other litigation."); *Ascher*, 128 B.R. at 646 ("Because administration of the [Debtors'] estate can take place only after [this action] is resolved, 'a substantial likelihood exists that the estate and its creditors [would] suffer a lengthy and prejudicial delay." (citation omitted)). Notably, the Third Circuit has stated that "the requirement of 'timely adjudication' in a state forum can serve to retain a *significant* number of cases in federal court." *Stoe*, 436 F.3d at 215 (emphasis added) (citation omitted).

In a similar case involving both a motion to reject a contract and a motion for determination of whether that same contract was terminated prepetition, a New Jersey

District Court concluded that mandatory abstention did not apply because the termination motion could not be timely adjudicated in state court:

> Because the Termination Motion is so integrally related to the Motion to Reject and the bankruptcy case as a whole, a state court adjudication would adversely affect the bankruptcy proceedings by disrupting the course of proceedings which have been ongoing in the bankruptcy case for three and a half years. There is no dispute the disposition of the Termination Motion on the merits could have a very large impact on the administration of the bankrupt estate. Even if a state court could, with "relative alacrity," adjudicate the termination and breach of contract claims, the needs of this title 11 case compel the conclusion that resolution in state court would not be sufficiently timely.

*Nickels Midway Pier*, 372 B.R. at 228 (footnote omitted). The same reasoning applies here.

Because this core action cannot be timely adjudicated in the North Dakota State Court, mandatory abstention does not apply.[11]

## B.    Permissive Abstention Is Not Warranted.

Because it "is an extraordinary and narrow exception to the duty of a [bankruptcy court] to adjudicate a controversy properly before it," permissive abstention is only "appropriate in a few carefully defined situations." *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir. 1992) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)) (stating that "abstention remains 'the exception, not the rule'" and thus should rarely be invoked); *see also Crown*

---

[11]    The cases cited by Caliber are distinguishable. *See Trans World Airlines, Inc. v. Icahn (In re Trans World Airlines, Inc.)*, 278 B.R. 42 (Bankr. D. Del. 2002) (no indication that resolution in state court would delay administration of the estate); *Sun Healthcare Grp., Inc. v. Levin (In re Sun Healthcare Grp., Inc.)*, 267 B.R. 673, 677 (Bankr. D. Del. 2000) (adversary proceeding could be timely adjudicated in state court where there was a "weak nexus" between the bankruptcy case and the adversary proceeding and there was no indication that the defendant's success in the state court action "would threaten the financial health and ability of the Debtors to reorganize").

*Village Farm*, 415 B.R. 95 (same); *In re Direct Response Media, Inc.*, 466 B.R. 626, 658-59 (Bankr D. Del. 2012) (same). Courts have set forth twelve factors that may be considered in determining whether abstention is appropriate:

(1)  the effect or lack thereof on the efficient administration of the estate;

(2)  the extent to which state law issues predominate over bankruptcy issues;

(3)  the difficulty or unsettled nature of the applicable state law;

(4)  the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5)  the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6)  the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7)  the substance rather than the form of an asserted "core" proceeding,

(8)  the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)  the burden on the court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) the presence in the proceeding of nondebtor parties.

*HQ Global Holdings*, 293 B.R. at 844; *see also Mobile Tool Int'l*, 320 B.R. at 556-57. Here, the factors overwhelmingly weigh *against* abstention.

1.    Factor 1: Effect on the Efficient Administration of the Estate

As discussed in section II.B, the administration of the Debtors' Chapter 11 Cases will be substantially delayed if this action is dismissed or stayed while the North Dakota Action is litigated in the North Dakota State Court. Because this action is intertwined with the Rejection Motion—a focus of the Debtors' reorganization—"equity favors the

unfettered authority of the bankruptcy court to proceed expeditiously and without the time-consuming and costly distraction" of litigation in the North Dakota State Court. *Ionosphere Clubs*, 108 B.R. at 955. This factor, therefore, weighs heavily against abstention. *See DBSI*, 409 B.R. at 729 (stating that the declaratory judgment action over the effect of orders rejecting certain leases would likely "have a significant effect on the efficient administration" of the bankruptcy estate, which "strongly disfavors abstention"); *HQ Global Holdings*, 293 B.R. at 844-45 (declaratory judgment on whether sublease was terminated pre-petition "clearly [would] have an effect on the administration of the estate"); *Crown Village Farm*, 415 B.R. at 97 (denying request for abstention in proceeding to determine debtor's interest in certain property where "abstaining would have a deleterious effect on the administration of the Debtor's chapter 11 case which would languish while core issues were tried elsewhere").

    2.    Factor 2: Extent State Law Issues Predominate

    While this proceeding raises a state law issue, that alone is not determinative. *See, e.g.*, *HQ Global Holdings*, 293 B.R. at 845 (denying request for abstention where state law issues predominated); *Ascher*, 128 B.R. at 643 ("[A]nalysis of state law issues to decide cases without [a bankruptcy court's] jurisdiction is an integral part of the daily work of the Bankruptcy Court."). Numerous federal courts have considered or are considering the very types of issues that are raised here in the context of motions to reject. *See, e.g.*, *Sabine Oil & Gas Corp. v. HPIP Gonzales Holdings, LLC (In re Sabine Oil & Gas Corp.)*, 550 B.R. 59 (Bankr. S.D.N.Y. 2016); Compl. for Declaratory Judgment, *Emerald Oil, Inc. v. Dakota Midstream, LLC (In re Emerald Oil, Inc.)*, Adv. Proc. No. 16-50998, Dkt. No. 1 (Bankr. D. Del. June 3, 2016) (requesting judicial declaration that

certain gathering agreements do not contain covenants or equitable servitudes that run with the land under North Dakota law); Adv. Compl. for Declaratory Relief, *In re Magnum Hunter Res. Corp.*, No. 15-12533-KG, Dkt. No. 843 (Bankr. D. Del. Mar. 18, 2016) (raising issue under Texas law); Adv. Compl. for Declaratory Relief, *In re Penn Virginia Corp.*, No. 16-32395, Dkt. No. 322 (Bankr. E.D. Va. June 17, 2016) (raising issue under Texas law).

### 3.    Factor 3: Unsettled Issues of State Law

Caliber contends that adjudication of this adversary proceeding requires the "court to determine—and create important precedent for—a novel issue of North Dakota state property law." (MTD Mem. ¶ 52.) Not so. This action requires the Court to apply the standard for whether a covenant runs with the land—which is clearly set out in section 47-04-26 of the North Dakota Century Code and recent case law[12]—to the contracts at issue. There is simply no open question of North Dakota law that the Court needs to reach to determine whether the Specified Caliber Contracts contain covenants that run with the land.

A bankruptcy court in the Southern District of New York recently rejected an argument similar to the one made by Caliber here after that court concluded that the midstream services agreements at issue did not contain covenants running with the land. *See Sabine Oil & Gas Corp. v. HPIP Gonzales Holdings, LLC (In re Sabine Oil & Gas Corp.)*, 551 B.R. 132, 139-40 (Bankr. S.D.N.Y. 2016) (hereinafter *Sabine II*). In denying

---

[12]    In order for a covenant to run with the land, it must (1) be contained in a grant of an estate of real property and (2) directly benefit the property. *See* N.D. Cent. Code. § 47-04-26; *Wheeler v. Southport Seven Planned Unit Dev.*, 821 N.W.2d 746, 753 (N.D. 2012); *Beeter v. Sawyer Disposal LLC*, 771 N.W.2d 282, 285 (N.D. 2009); *see also Golden v. SM Energy Co.*, 826 N.W.2d 610, 614 (N.D. 2013).

a request for certification of a rejection order for direct appeal, the bankruptcy court stated that its "decision relied on a case-specific analysis of (i) the applicable language in the [agreements at issue] and (ii) the relevant facts of the[] cases to determine that the covenants at issue do not run with the land." *Id.* at 139. The court further noted it "did not purport to determine the proper construction of unsettled issues of [state] law" and that—despite the fact that there was "no applicable binding decision" from the state supreme court—"no open question under [state] law need be reached for the [c]ourt to determine that the applicable covenants to do not run with the land." *Id.* at 139-40. The same reasoning applies here. However, even if this action did require the Court to interpret novel issues of state law, which it does not, that is not sufficient grounds for abstaining from this core proceeding, which will have a substantial impact on the administration of the Debtors' estates. *See Semcrude*, 2010 WL 5140487, at *9-10 (denying motion to abstain in action where the court would "be called upon to interpret state laws and regulations governing the oil and gas industry, including questions that appear largely unsettled").

Caliber also contends that resolution of this action "will have broad public policy implications in North Dakota" that "will implicate the legality of significant bargained-for contracts between midstream companies and their producer counter-parties, and has the potential to disrupt the midstream and upstream industries in North Dakota." (MTD Mem. ¶ 54-55.) Caliber's dire predictions about the potential effect of a ruling in this adversary proceeding are overstated. While a ruling will certainly be significant for the parties here, the holding will not be "a referendum on [North Dakota] property law and all contracts of similarly-situated parties in the oil and gas industry." *Sabine II*, 551 B.R.

at 141. [13] Because this action does not require the interpretation or application of unsettled law, Factor 3 weighs against abstention.[14]

    4.    Factor 4: Presence of Related Proceeding in State Court

Caliber North Dakota is the only defendant that is a party to the North Dakota Action, which involves only two of the five contracts at issue here. Because this adversary proceeding is the only case which is pending that has all the interested parties and covers all the relevant contracts, the pending North Dakota Action does not favor abstention. *See HQ Global Holdings*, 293 B.R. at 846 (concluding that factor 4 did not favor abstention where the adversary proceeding was the only case pending that had all the interested parties).

---

[13]  Caliber postulates a variety of speculative public-policy consequences of a ruling in TUSA's favor, yet there is no basis to suppose that a North Dakota state court would decide the action by weighing the indirect consequences that a ruling may or may not have on the North Dakota economy or environment, as opposed to interpreting and applying the applicable statutes and case law concerning real covenants. To the contrary, the court likely would conclude that such policy considerations are the province of the North Dakota general assembly and the North Dakota Industrial Commission.

[14]  The cases cited by Caliber are inapposite. *See Mayeres v. BAC Home Loans*, No. 10-44816 (MBK), 2011 WL 2945833, at *5, *10 (Bankr. D.N.J. July 21, 2011) (abstaining from core bankruptcy proceedings under *Rooker-Feldman* and *Younger* doctrines where state court had already granted summary judgment as to the issue and the "essence" of the plaintiff's claim in the adversary proceeding was "to reverse the state court judgment"); *Verity v. Wells Fargo Bank, N.A. (In re Verity)*, No. 10-20880 (DHS), 2012 WL 3561669, at *6 (Bankr. D.N.J. Aug. 16, 2012) (same); *State ex rel. Roberts v. Mushroom King, Inc.*, 77 B.R. 813, 821 (D. Or. 1987) (dismissing claims not related to bankruptcy case); *Doyle v. Deutsche Bank Nat'l Trust Co. (In re Doyle)*, No. CIV-14-0951-M, 2015 WL 2128140, at *4 (W.D. Okla. May 6, 2015) (dismissing appeal from bankruptcy court's order abstaining from non-core adversary proceeding where the confirmation of the plan had since been denied and the bankruptcy case dismissed); *Sweeney v. Citicorp Person-to-Person Fin. Ctr., Inc. (In re Sweeney)*, 49 B.R. 1008, 1010 (N.D. Ill. 1985) (abstention proper in non-core proceeding involving a novel question of law under state's usury statute).

Moreover, Caliber North Dakota initiated the North Dakota Action, before any case or controversy existed, in an effort to prevent this Court from resolving the issues in the uncertain event TUSA filed for bankruptcy and moved to reject the contracts. In fact, at the time of the filing of the North Dakota Action, TUSA and its affiliates were in confidential discussions with Caliber affiliates regarding how to *avoid* a bankruptcy filing. Because this action was prematurely filed before there was a case or controversy, and there is no state court proceeding involving two of the three defendants, Factor 4 weighs against abstention.

5.      Factor 5: Independent Basis for Federal Jurisdiction

TUSA does not dispute that there is no basis for federal jurisdiction apart from the Chapter 11 Cases.    (But, it also remains true that but for the TUSA bankruptcy proceeding, this case would have no independent existence.)

6.      Factor 6: Degree of Relatedness to the Main Bankruptcy Case

As discussed above, this action is inextricably intertwined with the Debtors' Rejection Motion pending before this Court. Because resolution of both matters is critical to the Debtors' ability to successfully complete their reorganization, it is surprising that Caliber would characterize this action as having a "minimal effect on the administration of TUSA's estate." (MTD Mem. ¶ 58.) Notably, Caliber does not explain *how* the Debtors can complete their reorganization without resolution of the issues presented in this action. Factor 6 strongly disfavors abstention.

7.      Factor 7: Substance of the Proceeding

As explained in section II.A, this action involves *core* proceedings, and therefore Factor 7 weighs heavily against abstention.

8.      Factor 8: Feasibility of Severing Core Matters

Because all of the issues involved in this adversary proceeding are core, severing the counts is not feasible. However, even if this action did involve non-core claims, abstention would still not be warranted due to the detrimental impact that abstention would have on the timely and efficient administration of the Debtors' reorganization, *see supra* section II.A. Factor 8 weighs against abstention.

9.      Factor 9: Burden on the Court's Docket

This Court will already be adjudicating the Rejection Motion and other issues arising in the Debtors' Chapter 11 Cases, and this action will add little burden to this Court's docket. Factor 9 therefore weighs against abstention.

10.     Factor 10: Likelihood of Forum Shopping

TUSA's filing of this adversary proceeding does not constitute forum-shopping. As explained above, the core bankruptcy issues presented in this lawsuit and the importance of these issues to the Debtors' reorganization, warrant placing venue in this Court despite the Forum Selection Clauses. This Court's decision in *Omna Med. Partners, Inc. v. Carus Healthcare, P.A. (In re Omna Med. Partners, Inc.)*, is not to the contrary because that case involved the determination of issues that were not central to the debtor's reorganization. No. 00-1493 (MFW), 2000 WL 33712302, at *3-4 (Bankr. D. Del. June 12, 2000) (stating that the action involved only a determination of the parties' rights under an agreement terminated pre-petition and that the debtor did not "contemplate reorganizing around its relationship" with the defendants). Because TUSA did not forum shop by filing this action, Factor 10 weighs against abstention.

11.    Factor 11: Right to a Jury Trial

Caliber does not assert, nor does it have, a right to a jury trial. This factor therefore weighs against abstention.

12.    Factor 12: Proceeding Involves Non-Debtor Parties

This action does not involve only former debtors or non-debtor parties like the case cited by Caliber. *See LaRoche Indus., Inc. v. Orica Nitrogen LLC (In re LaRoche Indus.)*, 312 B.R. 249, 255 (Bankr. D. Del. 2004) ("Merely having once been a debtor in a bankruptcy case is insufficient to require the bankruptcy court to continue to resolve all disputes involving that party."). Here, TUSA is a debtor and Caliber is a creditor and party-in-interest to the Chapter 11 Cases and likely objector to the Rejection Motion. This factor weighs against abstention. *See DBSI*, 409 B.R. at 730 (concluding that Factor 12 disfavored abstention where the debtors were not named parties to the action but were "undoubtedly interested parties").

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

The factors here overwhelmingly weigh against abstention. While Caliber cites numerous cases in support of its permissive abstention argument, nearly all of those involved *non-core* proceedings where litigating in state court would have little to no effect on the administration of the estate. *See Fruit of the Loom, Inc. v. Magnetek, Inc. (In re Fruit of the Loom, Inc.)*, 407 B.R. 593, 600 (Bankr. D. Del. 2009) (granting motion to abstain in non-core proceeding where the debtors' reorganization had taken place *seven* years prior and the instant action would "not have any significant effect on the efficient administration of the estate"); *Lemonis v. Doerge Capital Collateralized Bridge Fund, L.P. (In re Holiday RV Superstores Inc.)*, 362 B.R. 126, 130 (D. Del. 2007) (abstention

appropriate in non-core proceeding between non-debtors where the plan of reorganization had already been confirmed and the administration of the debtor's estate would not be affected); *Integrated Health Servs.*, 291 B.R. at 621 (favoring abstention in non-core proceeding where the continued prosecution of the litigation would have little effect on the debtors' reorganization).[15]

Caliber cites to only five cases where a court ruled that abstention was appropriate despite the fact that the proceeding was core or potentially core. Each of these cases is readily distinguishable. *See Omna Med. Partners*, 2000 WL 33712302, at *3 (remanding core action where the terminated contracts at issue were not central to the debtor's reorganization and the "efficient administration of the bankruptcy estate [would] not be disrupted by litigating [the] issues in state courts"); *LaRoche Indus.*, 312 B.R. at 254-55 (concluding that permissive abstention was warranted for core bankruptcy matter where the debtor's bankruptcy case had been closed for over a year, the action would not have little to no effect on the bankruptcy estate, and the plaintiff asserted its right to a jury trial); *FKF Madison Grp. Owner LLC v. 18 East 23rd Street Realty Co. (In re FKF*

---

[15]    *See also Wells Fargo Bank N.A. v. Johnson*, No. CIV. 11-1205-SLR, 2012 WL 1203427, at *4 (D. Del. Apr. 4, 2012) (remanding non-core action that was merely related to closed Chapter 7 bankruptcy proceedings); *In re Buxton*, No. 08-25571-EPK, 2011 WL 4501159, at *11 (Bankr. S.D. Fla. Apr. 8, 2011) (abstaining where present actions were "remote from the main bankruptcy case" and abstaining would have "no effect on the efficient administration of the bankruptcy estates"); *Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 713 (D. Del. 2006) (abstaining in non-core action commenced by debtor in state court where confirmation of the bankruptcy plan was not contingent upon resolution of state court action); *Frelin v. Oakwood Homes Corp.*, 292 B.R. 369, 381 (Bankr. E.D. Ark. 2003) (remanding non-core proceeding where the action had been pending in state court for two years, the state court had already decided key issues, and the bankruptcy court would be "starting over"); *Steinman v. Spencer  (In re Argus Grp. 1800, Inc.)*, 206 B.R. 737 (Bankr. E.D. Pa. 1996) (abstaining from non-core proceeding where related state court action had been pending for a year and had a trial ready date scheduled).

*Madison Park Grp. Owner, LLC)*, No. 10-11867(KG), 2012 WL 174342, at *2 (Bankr. D. Del. 2012) (questioning, without deciding, whether issues in adversary proceeding were core but nonetheless abstaining where the debtors "have virtually no stake in the outcome of the litigation" and the "litigation [was] not in any way linked to the administration of the [bankruptcy] case"); *Mayeres*, 2011 WL 2945833 (abstaining from core bankruptcy proceedings under *Rooker-Feldman* and *Younger* doctrines where state court had already granted summary judgment as to the issue); *Sargent Cty. Bank v. Wentworth (In re Wentworth)*, No. 88-05068, Adv. 88-7055, 1988 WL 1014966, at *2 (Bankr. D.N.D. June 13, 1988) (abstaining from core proceeding because it involved an issue which was already the subject of a proceeding pending before the state supreme court).

## CONCLUSION

For the reasons set forth above, TUSA respectfully requests that the Court deny Caliber's motion to dismiss or transfer for improper venue, or, alternatively, to dismiss or stay on abstention grounds.

Dated: Wilmington, Delaware
September 2, 2016

SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP

*/s/ Sarah E. Pierce*
Sarah E. Pierce (I.D. No. 4648)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

– and –

Albert. L. Hogan III
Ron E. Meisler
Christopher M. Dressel
Renu P. Shah
Lindsey Sieling
155 N. Wacker Drive
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Counsel for Plaintiff Triangle USA Petroleum
Corporation*